# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Equal Employment Opportunity Commission,

                              Plaintiff,

                                                 Civ. No. 07-3976 (RHK/AJB)
                                                          **ORDER**

v.

Faribault Foods, Inc.,

                              Defendant.

---

Francisco Mendez, et al.,

                              Plaintiffs,

                                                 Civ. No. 07-3986 (RHK/AJB)
                                                          **ORDER**

v.

Faribault Foods, Inc.,

                              Defendant.

---

Equal Employment Opportunity Commission,

                              Plaintiff,

                                                 Civ. No. 07-3977 (RHK/AJB)
                                                          **ORDER**

v.

The Work Connection,

                              Defendant.

---

Alecia Moreno, et al.,

                                  Plaintiffs,

                                       Civ. No. 07-3985 (RHK/AJB)
                                            **ORDER**

v.

The Work Connection,

                                  Defendant.

---

Laurie A. Vasichek, Equal Employment Opportunity Commission, Minneapolis, Minnesota, Jessica J. Clay, James H. Kaster, Sofia B. Andersson-Stern, Nichols Kaster & Anderson, PLLP, Minneapolis, Minnesota, for Plaintiffs.

Holly M. Robbins, David J. Goldstein, Daniel N. Lovejoy, Faegre & Benson, LLP, Minneapolis, Minnesota, for Defendant Faribault Foods, Inc.

Bradley J. Lindeman, John J. McDonald, Jr., Meager & Geer, PLLP, Minneapolis, Minnesota, for Defendant The Work Connection.

---

## INTRODUCTION

      The Plaintiffs in these four actions allege that Defendants Faribault Foods, Inc.

("Faribault") and The Work Connection ("TWC") discriminated against certain of their

current and former employees on the basis of their race and national origin, in violation of

state and federal law.  Two of the actions were commenced as class actions by former and

current employees of the Defendants; the other two actions were commenced by the

Equal Employment Opportunity Commission ("EEOC").  Presently pending before the

Court is the parties' request for approval of two Consent Decrees settling these cases and

class counsel's application for attorneys' fees and costs in connection with the two class

cases.  For the reasons set forth below, the Court approves both Consent Decrees and the application for fees and costs.

## FINDINGS OF FACT

1.      Faribault is a Minnesota corporation that operates food-production facilities in Faribault, Minnesota.  In <u>Mendez v. Faribault Foods</u>, No. 07-3986, a class of Hispanic current and former employees of Faribault allege that they have been (or were) discriminated against during their employment on the basis of their race and national origin.

2.      TWC is a St. Paul, Minnesota-based employment agency that provides employees to Faribault.  A class of Hispanic current and former employees of TWC assigned to work for Faribault commenced <u>Moreno v. The Work Connection</u>, No. 07-3985, alleging that they have been (or were) discriminated against during their employment on the basis of their race and national origin.

3.      The EEOC commenced an investigation into these allegations and subsequently filed similar actions against both Faribault and TWC, which are the other two cases captioned above.

4.      The parties agreed to mediate these disputes.  During the course of the mediation, the EEOC's investigation, and several months of negotiations, Faribault and TWC provided a substantial amount of information to the EEOC and to the Plaintiffs in <u>Mendez</u> and <u>Moreno</u>, including the exchange of expert reports.  That information was sufficient for the Plaintiffs to assess the strengths and weaknesses of their claims and to

make an informed decision about whether to settle their claims.  All parties were represented by counsel during the mediation.

5.      As a result of mediation, the parties agreed to settlements in each of these cases, which were embodied in two Consent Decrees.  The Court preliminarily approved those Consent Decrees on October 17, 2007.

6.      The Consent Decrees provided for, among other things, notice of the proposed settlements to be given to class members.  The Court approved the form and the manner of the notice under Federal Rule of Civil Procedure 23; the notice informed class members of the terms of the settlements and of the steps required to be taken to file claims or to object to or exclude themselves from the settlements.  The Court also approved the proposed claim form to be filed by class members.

7.      The first Consent Decree, which settles the two Faribault cases, provides for a total payment of $900,000 to the class representatives in the <u>Mendez</u> action, including fees and costs to counsel for the Plaintiffs in that action ($340,000 in fees and $60,000 in costs, for a total of $400,000) – in other words, the <u>Mendez</u> class representatives will receive a total of $500,000.[1]

---

[1] Although the Consent Decree indicates that class counsel would seek an award of $435,000 in fees and costs, counsel revised that amount to $400,000 subsequent to the Court preliminarily approving the Consent Decrees.  (<u>See</u> Pl. Mem. at 5-6; Andersson-Stern Decl. Ex. A.)

8.      All other class members in the <u>Mendez</u> action[2] were required to submit claim forms in order to receive payments, which are based on the claimant's tenure with the company: claimants employed for less than 60 days will receive $500; claimants employed at least 60 days but less than one year will receive $1,500; claimants employed at least one year but less than two years will receive $2,000; claimants employed at least two years but less than three years will receive $2,500; and claimants employed three or more years will receive $3,500.  Persons who applied for, but did not obtain, a job with Faribault will receive $100.  Faribault will make these payments directly to each class member.  All payments are subject to appropriate income-tax withholding.

9.      The Consent Decree also mandates certain operational changes at Faribault to prevent discrimination against Hispanic employees going forward, such as the establishment of a Diversity Committee, mandatory diversity training for managers, and the posting of policies and procedures in both English and Spanish on an ongoing basis.

10.     The second Consent Decree, which settles the two TWC cases, provides for a total payment of $160,000 by TWC, which includes $60,000 in attorneys' fees and costs ($48,000 in fees and $12,000 in costs) to counsel for the Plaintiffs in the <u>Moreno</u> action.

---

[2] Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Consent Decree defines (for purposes of settlement) the class as (1) all Hispanic individuals who worked for Faribault and (2) all Hispanic individuals who applied to work at Faribault, at any time on or after September 21, 2001, and on or before October 9, 2007, except those who have opted out of the class.

11.     The remaining $100,000 will be paid in a lump-sum by TWC and allocated to all class members[3] who have submitted a claim form, based on the length of their tenure working for Faribault through TWC.  Persons who applied for, but did not obtain, a job with Faribault through TWC will receive $100.  All other class members will receive payments ranging from $300 to $3,500, as set forth in Exhibit A to the Declaration of Sofia Andersson-Stern (counsel for the class Plaintiffs).  Unlike the terms of the Consent Decree resolving the <u>Mendez</u> action, the class representatives in <u>Moreno</u> will not receive compensation differently from the remaining class members.

12.     The Consent Decree also provides that TWC will not violate federal and state employment laws in the future and requires TWC to take certain steps to prevent discrimination against Hispanic employees, such as providing interpreters for job-related safety tests.

13.     Following the Court's preliminary approval of the Consent Decrees, Faribault and TWC provided class counsel with the names and addresses of approximately 1,000 potential class members.  Counsel mailed notices of the proposed settlements (which included the right to object and/or opt out) and claim forms to those class members, in both English and Spanish.

---

[3] Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Consent Decree defines (for purposes of settlement) the class as (1) all Hispanic individuals who worked for Faribault via a placement through TWC and (2) all Hispanic individuals who applied to work at Faribault via a placement through TWC, at any time on or after September 21, 2001, and on or before October 9, 2007, except those who have opted out of the class.

14.     Class counsel also took additional steps to ensure that all class members were advised of the settlements and of their right to decline to participate, including (1) setting up a dedicated toll-free number for phone calls concerning the Mendez and Moreno actions, (2) sending reminder post cards to class members who had not returned claim forms, (3) conducting searches to obtain current addresses for class members when the originally mailed notices were returned as undeliverable, and re-mailing notices and claim forms when new addresses were located, (4) broadcasting notice of the settlements on a Spanish-language radio station in the Faribault, Minnesota area, and (5) publishing notices of the settlements in Faribault, Minnesota, and Eagle Pass, Texas (where a large number of Hispanic employees of Faribault reside during the winter).

15.     232 individuals have submitted claim forms in the Mendez action.[4]  All told, Faribault will pay $218,600 to those class members, in accordance with the payment guidelines set forth above.

16.     146 individuals (129 class members and 17 class representatives) have submitted claim forms in the Moreno action.[5]  Class counsel devised a proposed allocation of the $100,000 settlement fund to these 146 claimants based on the length of

---

[4] Plaintiffs' Memorandum indicates that 238 persons returned claim forms (see Pl. Mem. at 4), but only 232 individuals are listed as claimants in Exhibit A to the Declaration of Sofia Andersson-Stern.  There is no apparent explanation for this discrepancy.

[5] The proposed Order submitted by class counsel indicates that 146 individuals (including the class representatives) timely submitted claim forms.  Exhibit A to the Declaration of Sofia Andersson-Stern, however, indicates that 147 persons (including the class representatives) have filed claims.  There is no apparent explanation for this discrepancy.

their employment, and that allocation was presented to Laurie Vasichek, Senior Trial

Attorney at the EEOC (and the EEOC's counsel in these cases), and retired Magistrate

Judge Jonathan Lebedoff, for their review pursuant to the terms of the Consent Decrees.

Ms. Vasichek and Judge Lebedoff have approved the proposed allocations.

17.     No objections to the terms of the proposed settlements or to the two

Consent Decrees have been filed, and no class member has expressed a willingness to opt

out of either the <u>Mendez</u> or the <u>Moreno</u> class.

## CONCLUSIONS OF LAW

1.      The Court has subject-matter jurisdiction over these actions and personal

jurisdiction over the parties thereto.

2.      Venue is proper in this Court because Defendants maintain their principal

places of business in Faribault, Minnesota, and St. Paul, Minnesota, respectively, which

lie within the District of Minnesota.

3.      The requirements of Federal Rule of Civil Procedure 23 have been satisfied

in the <u>Moreno</u> and <u>Mendez</u> actions, insofar as questions of law or fact common to class

members predominate over any questions affecting only individual members, and a class

action is superior to other available methods for fairly and efficiently adjudicating these

cases.

4.      The forms and methods of notice provided to class members were adequate

to inform them of the terms of the settlements and to advise them of their rights to opt out

or object.  Fed. R. Civ. P. 23(e)(1).

5.      Judicial approval is required for a class-action settlement.  See Fed. R. Civ.

P. 23(e).  The Court may approve such a settlement after finding that it is "fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making that determination here,

the Court must consider (1) the merits of the class Plaintiffs' cases, weighed against the

terms of the settlements, (2) each Defendant's financial condition, (3) the complexity and

expense of further litigation, and (4) the amount of opposition to the settlements.  In re

Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005); Van

Horn v. Trickey, 840 F.2d 604, 607 (8th Cir. 1988).

6.      Having considered these factors, the Court concludes that the settlements in

these cases are fair, reasonable, and adequate.  The settlements provide substantial

monetary relief to the class members, in addition to wholesale changes in Defendants'

business operations to prevent discrimination on a going-forward basis.  Absent the

settlements, Defendants likely will raise several complicated legal arguments in an effort

to avoid liability in these actions, leaving eventual recovery by the class Plaintiffs

uncertain.  Moreover, these cases were in their infancy when the parties reached the

settlements.  The complexity and expense of further litigation, including protracted

discovery and motion practice, would have been significant.  Furthermore, even if the

class Plaintiffs were successful in such litigation, they likely would not receive monetary

relief without several more years of litigation, including likely appeals by the Defendants.

In addition, a substantial number of claim forms have been filed, no opposition has been

lodged against the terms of the settlements or the Consent Decrees, and no class member

has chosen to opt out in either class case.  Finally, the Court accords some weight to class counsel's view that the settlements are fair, reasonable, and adequate, see Isby v. Bayh, 75 F.3d 1191, 1200 (7th Cir. 1996) (noting it is appropriate to consider attorneys' view that settlement is adequate where (as here) class counsel are experienced litigators), as well as the fact that the EEOC shares that view.

7.      The allocations of the settlement funds set forth above and in the Declaration of Sofia Andersson-Stern are fair, reasonable, and adequate distributions of the settlement funds.

8.      An award of attorneys' fees in a class-action settlement is committed to the sound discretion of the district court.  See Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1157 (8th Cir. 1999).  The district court may calculate an appropriate fee award either by using the lodestar method (reasonable number of hours expended multiplied by a reasonable hourly rate) or by awarding a fraction of the common fund obtained by the class.  Id. at 1157; Johnston v. Comerica Mortgage Corp., 83 F.3d 241, 244-45 (8th Cir. 1996).

9.      Class counsel has requested $340,000 in fees and $60,000 in costs in connection with the Mendez action, and $48,000 in fees and $12,000 in costs in connection with the Moreno action.  The total amount to be paid by Defendants pursuant to the Consent Decrees in these cases is $1,278,600, as follows:  $900,000 to the Mendez class representatives and for attorneys' fees and costs; plus an additional $218,600 to the class members in Mendez; plus an additional $160,000 to the class members and for

attorneys' fees and costs in <u>Moreno</u>.  Class counsel's request, therefore, amounts to approximately 36% of the combined settlement funds in these cases ($460,000/$1,278,600).[6]

10.    The amount of fees and costs sought by class counsel is reasonable and appropriate given the significant financial recovery obtained in these cases.  <u>See, e.g.</u>, <u>In re U.S. Bancorp Litig.</u>, 291 F.3d 1035, 1038 (8th Cir. 2002) (upholding award of attorneys' fees amounting to 36% of settlement fund of $3.5 million); <u>In re Xcel Energy, Inc.</u>, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (Doty, J.) ("[C]ourts in this circuit and in this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions.").

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** as follows:

1.    The Settlement Classes defined in the Consent Decrees (and set forth above in footnotes 2 and 3) are **CERTIFIED** pursuant to Federal Rule of Civil Procedure 23 for settlement purposes;

2.    Final approval of the Consent Decrees is **GRANTED**.  The Consent Decrees shall become effective when either the time for appeal has run without an appeal

---

[6] The amount requested, limited to attorneys' fees (*i.e.*, excluding costs), represents approximately 30% of the settlement funds.

being filed or any appeal (including any requests for rehearing or rehearing *en banc* or petitions for writs of *certiorari*) has been finally resolved;

3.      Class members in <u>Moreno</u> shall be able to draw their settlement payments from the $100,000 settlement fund in that action until December 1, 2008.  Any class member who fails to draw his or her payment by the deadline shall forfeit his or her right to a settlement payment.  Any payments not drawn by the deadline shall be distributed to Centro Campesino, a non-profit organization dedicated to improving the lives of Hispanic migrant workers in southern Minnesota;[7]

4.      Class counsel's application for attorneys' fees and costs is **APPROVED**, and class counsel is awarded $388,000 in attorneys' fees and $72,000 in costs;

5.      This Order has been entered without any admission by any of the parties as to the merits of any of the allegations in these cases and shall not constitute a finding of either fact or law as to the merits of any of the claims asserted therein;

6.      The Complaint in each of these cases is **DISMISSED WITH PREJUDICE**.  The parties shall pay their own fees, costs, and disbursements, except as set forth above; and

7.      The Court retains jurisdiction over these matters for purposes of ensuring compliance with the Consent Decrees and this Order.

---

[7] The Court concludes that distributing unclaimed funds to Centro Campesino is consistent with the purpose behind the claims alleged in these lawsuits.  <u>See</u> <u>In re Airline Ticket Comm'n Antitrust Litig.</u>, 307 F.3d 679, 682-83 (8th Cir. 2002) (noting that "a *cy pres* distribution" should be "tailor[ed] . . . to the nature of the underlying lawsuit").

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March  28 , 2008                                    s/Richard H. Kyle
                                                            RICHARD H. KYLE
                                                            United States District Judge